## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| URE NSP CORPORATION<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS<br>AND BORDER PROTECTION<br><br>　　　　Defendant. | CASE NO.: 23-00154 |

## **COMPLAINT**

COMES NOW, the Plaintiff, URE NSP Corporation, ("URE NSP"), by and through its undersigned counsel, who alleges the following complaint against the United States Customs and Border Protection. In support of its complaint, URE NSP states the following:

1. Plaintiff is a corporation duly organized and existing under the laws of California.

## **JURISDICTION**

2. This is an action contesting the United States Customs and Border Protection's ("CBP" or "Customs") decision under Section 1515 of the Tariff Act (19 U.S.C. § 1515) denying Plaintiff's protest of the duties and fees assessed and paid on the importation of crystalline silicon photovoltaic products from Taiwan.

3. Plaintiff is the importer of record for the entries whose liquidations were protested and are the subject of this action.

4. The entries that are the subject of this litigation have been liquidated and the administrative protests were filed. The protests were denied and all administrative

1

remedies have been exhausted.

5. This civil action is timely commenced through the filing of a summons within 180 days of the denial of the protest.

6. Plaintiff has paid all liquidated duties, fees, and exactions paid at or pursuant to the entries and liquidations which are subject to the protests, together with interest thereon from the dates of payment of such duties, fees, and exactions.

7. The value in controversy in this case exceeds twenty dollars.

8. This Court has jurisdiction over this action under 28 U.S.C. § 1581(a).

9. Plaintiff is the taxpayer and otherwise has standing to bring this action.

**BACKGROUND AND DESCRIPTION OF MERCHANDISE AND CLAIMS**

10. Plaintiff imported crystalline silicon photovoltaic products ("solar products") from Taiwanese manufacturer United Renewable Energy Co., Ltd. ("URECO") in Entry Nos. 79121176767; 79121176775 ("the entries"). The entry summaries (CF 7501), pro forma invoices, commercial invoices, packing lists, and bills of lading will be provided under a judicial protective order.

11. Before these two shipments, URECO was created by the merger of Neo Solar Power Corporation ("Neo Solar"), Gintech Energy Corporation ("Gintech"), and Solartech Energy Corporation ("Solartech").

12. On February 1, 2019, URECO requested the Department of Commerce ("Commerce") to initiate a Changed Circumstances Review ("CCR") to determine whether URECO was a successor-in-interest to NSP, Gintech, and Solartech, which would entitle it to use the specific antidumping duty ("ADD") cash deposit rate of NSP (1.33%) or Gintech (1.33%) or Solartech (1.33%).

13. Commerce initiated the CCR on March 26, 2019.

14. At the time these two entries were made, URE NSP's customs broker was instructed by CBP's lower level import specialist to use the case number (A-583-853-013) and the cash deposit rate assigned to NSP (1.33%).

15. Based on this information, URE NSP originally used the rate of 1.33% for these entries.

16. Later, URE NSP reached out to CBP's Center for Excellence and Expertise – Electronics Center. Center Director Jorge A. Garcia ("Director Garcia") advised URE NSP to use the "all-other" rate (19.5%).

17. From April 18, 2019 until Commerce's completion of the CCR, URE NSP used the all-other rate for solar products produced by URECO in Taiwan.

18. On August 6, 2019, URE NSP submitted a Prior Disclosure of additional duties and fees that would have been due to the United States if the appropriate antidumping duty rate were 19.5%. The Prior Disclosure for specific entries made through the Ports of Savannah (port code 1703) and Norfolk-Newport (port code 1401) included the subject entries and fifteen other entries and was submitted together with a check for $2,331,178.96, which was deposited on or around August 9, 2019. The Prior Disclosure will be provided under a judicial protective order. CBP's confirmation that the check has been cashed is attached as **Exhibit 1**.

19. On August 2, 2019 Commerce ultimately determined that URECO was a successor in interest to Gintech, NSP, and Solartech and therefore permitted to use their 1.33% cash deposit rate. See **Exhibit 2**.

20. On September 3, 2021, Commerce completed the administrative review for the review period of February 1, 2019 to January 31, 2020. See Certain Crystalline Silicon Photovoltaic Products From Taiwan: Final Results of Antidumping Duty Administrative

Review: Partial Rescission of Antidumping Duty Administrative Review; Final Determination of No Shipments; 2019-2020, 86 Fed. Reg. 49509 (Sep. 3, 2021). According to Commerce's liquidation instruction, shipments of crystalline silicon photovoltaic products subject to Antidumping Duty Order A-583-853 produced and exported by URECO, imported by or sold to (as indicated on the commercial invoice or Customs documentation) URE NSP, and entered or withdrawn from warehouse, for consumption during the period 02/01/2019 through 01/31/2020 shall be liquidated at x.xx%. The exact rate and the Revised Liquidation Instructions, message No. 2115401 will be provided under a judicial protective order.

21. As stated in Paragraph 14 above, at the time of making the entries at issue, URE NSP's customs broker was instructed to calculate the antidumping duty cash deposits based on NSP's 1.33% rate.

22. URE NSP's customs broker made a mistake in filing entry no. 79121176767. The broker overlooked the fact that the terms of sale were DAP[1] and inserted the entry value as $969,696.00, which included payment of freight charges of $30,813.50. The correct entry value of this entry would be $929,636.50.

23. As a result of the utilization of the 1.33% antidumping duty cash deposit rate and the incorrect valuation, URE NSP initially paid $257,041.78 in duties, tariffs and fees upon entry. The breakdown of payments is as follows:

---

[1] DAP means Delivery at Place. Under the DAP terms, the seller is responsible for delivery of the goods, ready for unloading, at the named place of destination. DAP price will include non-dutiable charges such as international freight.

| Correct Amount | Duty/Tariff/Fee | Correct Rate (if applicable) |
| --- | --- | --- |
| $12,896.96 | Antidumping duties (A583-853-013) | 1.33% |
| $242,424.00 | Section 201 | 25% |
| $508.70 | MPF | 0.3464% (and capped) |
| $1,212.12 | HMF | 0.125% |

24. Further, in the August 6, 2019 Prior Disclosure, URE NSP tendered an additional $176,193.76 cash deposit for antidumping duties.

25. Therefore, at the conclusion of Commerce's administrative review, URE NSP had already paid $433,235.54 in duties, tariffs and fees for entry no. 79121176767. These payments reflected a cash deposit rate for antidumping duty at 19.5% and were based on the incorrect entry value.

26. Based on the correct entry value of $929,636.50 and the final antidumping duty rate of x.xx%, the correct duties and fees for entry no. 79121176767 should be $250,162.59 which is broken down as follows:

| Correct Amount | Duty/Tariff/Fee | Correct Rate (if applicable) |
| --- | --- | --- |
| $16,082.71 | Antidumping duties | x.xx% |
| $232,409.13 | Section 201 | 25% |
| $508.70 | MPF | 0.3464% (and capped) |
| $1,162.05 | HMF | 0.125% |

27. Therefore the overpayments for this entry amounted to $183,072.96[2].

---

[2] Overpayment = $433,235.54 (total duties, tariffs and fees paid) - $250,162.59 (correct duties, tariffs and fees).

28. On August 12, 2022, URE NSP timely submitted a protest against entry no. 79121176767 on behalf of URE NSP to recover refunds for all overpayments associated with the higher entry value used, the Prior Disclosure and the final assessment of antidumping duties. The protest was assigned with protest no. 140122106862.

29. On April 6, 2023, CBP denied protest no. 140122106862 in part and issued a refund of $10,064.94. The reasoning reads as follows:

    > *Protest No. 140122106862 filed at Port 1401 has been Denied in Part for the following reasons:*
    >
    > *Disagree in Part, the bill should be canceled and reissued as $3185.75 plus interest. ADD still applies @ [x.xx]%. A refund for the Sect 201 and HMF would be $10,064.94.*

30. In its partial denial, CBP failed to consider the sums contributed in URE NSP's Prior Disclosure. By failing to account for the payment of $176,193.76 made in the Prior Disclosure, CBP must have considered that URE NSP only paid $257,041.78 for entry no. 79121176767. As illustrated in paragraph 26 above, CBP must have determined that the correct duties, tariffs and fees due under this entry to be $250,162.59. Thus, CBP must have determined that the amount URE NSP overpaid is $6,879.19.

31. The partial denial results in a refund of $10,064.94 and a bill of $3185.75. The net result is a net refund of $6,879.19.

32. Based on the refund granted, CBP only calculated the amounts based on the initial payments at the time of entry, not the additional amounts paid in the Prior Disclosure.

33. Proper accounting of the evidence provided to CBP would have demonstrated that URE NSP paid a total of $433,235.54 not the mere $257,041.78 that served as the basis for CBP's partial denial.

34. Because CBP did not consider all information provided in the protest, CBP failed to follow proper instructions and procedure.

35. URE NSP's customs broker made a mistake in filing entry no. 79121176775. The broker overlooked the fact that the terms of sale were DAP and inserted the entry value as $745,920.00, which included payment of freight charges ($30,813.50). The correct entry value of this entry would be $715,106.50.

36. As a result of the utilization of 1.33% antidumping duty rate and incorrect entry value, URE NSP initially paid $197,841.84 in duties, tariffs and fees upon enty. The breakdown of payments is as follows:

| Correct Amount | Duty/Tariff/Fee | Correct Rate (if applicable) |
| --- | --- | --- |
| $9,920.74 | Antidumping duties (A583-853-013) | 1.33% |
| $186,480.00 | Section 201 | 25% |
| $508.70 | MPF | 0.3464% (and capped) |
| $932.40 | HMF | 0.125% |

37. Further, in the August 6, 2019 Prior Disclosure, URE NSP tendered an additional $135,533.66 cash deposit for antidumping duties.

38. Therefore, at the conclusion of Commerce's administrative review, URE NSP had already paid $333,375.50 in duties, tariffs and fees for entry no. 79121176775. These payments reflected a cash deposit rate for antidumping duty at 19.5% and based on the incorrect entry values.

39. Based on the correct entry value of $715,106.50, the correct duties and fees for entry no. 79121176775 should be $192,550.55 which is broken down as follows:

7

| Correct Amount | Duty/Tariff/Fee | Correct Rate (if applicable) |
|---|---|---|
| $12,371.34 | Antidumping duties (A583-853-013) | x.xx% |
| $178,776.63 | Section 201 | 25% |
| $508.70 | MPF | 0.3464% (and capped) |
| $893.88 | HMF | 0.125% |

40. Therefore the overpayments for this entry amounted to $140,824.95[3].

41. On August 12, 2022, URE NSP timely submitted a protest against entry no. 79121176775 to recover refunds for all overpayments associated with the higher entry value used, the Prior Disclosure and the final assessment of antidumping duties. The protest was assigned with protest no. 140122106870.

42. On April 6, 2023, CBP denied protest no. 140122106870 in part and issued a refund of $7,741.89. The reasoning reads as follows:

> *Protest No. 140122106870 filed at Port 1401 has been Denied in Part for the following reasons:*
>
> *Disagree in Part, the bill should be canceled and reissued as $2450.60 plus interest. ADD still applies @ [x.xx]%. A refund for the Sect 201 and HMF would be $7741.89.*

43. In its partial denial, CBP failed to consider the sums contributed in URE NSP's Prior Disclosure. By failing to account for the payment of $135,533.66 made in the Prior Disclosure, CBP must have considered that URE NSP only paid $197,841.84 for entry no. 79121176775. As illustrated in paragraph 39 above, CBP must have determined that

---

[3] Overpayment = $333,375.50 (total duties, tariffs and fees paid) - $192,550.55 (correct duties, tariff and fees).

the correct duties, tariffs and fees due under this entry to be $192,550.55. Thus, CBP must have determined that the amount URE NSP overpaid is $5,291.29.

44. The partial denial results in a refund of $7741.89 and a bill of $2450.60. The net result is a net refund of $5,291.29.

45. Based on the refund granted, CBP only calculated the amounts based on the initial payments at 1.33% at the time of entry, not the additional amounts paid at 19.5% in the prior disclosure.

46. Proper accounting of the evidence provided to CBP would have demonstrated that URE NSP paid a total of $333,375.50 not the mere $197,841.84 that served as the basis for CBP's partial denial.

47. Because CBP did not consider all information provided in the protest, CBP failed to follow proper instructions and procedure.

48. Pursuant to 19 U.S.C. § 1515(d) on June 13, 2023, URE NSP submitted two requests to void protest denial for the subject entries. The documents were sent via USPS to the Port Director pursuant to 19 U.S.C. 1515(d), and courtesy copies were emailed to Import Specialist Marie Andujar, who had been handling these protests.

49. On July 12, 2023, more than 90 days after the protest denials, IS Andujar replied stating the following:

> *A protest filer seeking to file a request to set aside CBP's denial of further review must submit the request to reconsider AFR denial through the ACE Protest Module when the underlying protest was filed through the ACE Protest Module. The date of filing in the ACE Protest Module will be determined by the time of receipt of the request for setting aside the denial of further review in ACE based on midnight Eastern Standard Time (EST). For electronic submissions, the request will be considered filed in the ACE Protest Module with the Port/Center team designated as the Control team on the lead entry summary within 60 days after the date of the protest denial.*
> *4*

50. As of July 13, 2023, the 60 day deadline for filing an electronic request had already expired.

51. On July 17, 2023, IS Andujar confirmed that the timely physical copies of the requests to void protest denial would not be accepted.

## FIRST CAUSE OF ACTION

52. Paragraphs 1 to 51 are incorporated by reference.

53. URE NSP overpaid duties, tariffs and fees to CBP because (1) incorrect entry values were used, and (2) additional cash deposits were tendered in a prior disclosure at the instruction of CEE center director.

54. URE NSP used a rate of 19.5% in the Prior Disclosure, and the final rate was determined to be x.xx%.

55. URE NSP filed timely protests to recover refunds for overpayments.

56. CBP denied the protests in part based on a manifest disregard for all evidence provided.

57. The evidence provided to CBP demonstrates that URE NSP paid a total of $766,611.04, rather than $454,883.62 that CBP used to calculate its refund. This results in an underpayment of $311,727.43 in refunds.

58. In any civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930, this Court shall review the record *de novo*. Rheem Metalurgica S/A, formerly Rheem Empreendimentos Industriais E Comerciais S.A. v. United States, 951 F. Supp. 241, 246 (Ct. Int'l Trade 1996), aff'd sub nom. Rheem Metalurgica S/A v. United States, 160 F.3d 1357 (Fed. Cir. 1998). Any documents not submitted before the CBP can be supplemented before the Court. See ITT Corp. v. United States, 24 F.3d 1384, 1388 (Fed. Cir. 1994) ("an adverse decision does not preclude an importer from introducing

additional evidence, documentary or otherwise, at trial de novo before the Court of International Trade under § 2640(a) to substantiate further the alleged mistake of fact.").

59. Under the *de novo* review standard, this Court shall consider the documents submitted to this Court in determining the Plaintiff's claims for refund duties and fees paid on entry nos. 79121176767 and 79121176775.

60. The documents submitted with this Complaint demonstrate that the appropriate refund amount for entry nos. 79121176767 and 79121176775 is $183,072.96 and $140,824.95, respectively, and that protest nos. 140122106870 and 140122106862 should be approved.

61. Therefore, $311,727.43, plus any interest allowed by law should be refunded to Plaintiff.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff respectfully requests that this Court:

a) Order reliquidation of the entries covered by this civil action with refund of duties plus interest as provided by law;

b) Grant such other and further relief as the Court finds appropriate.

Respectfully submitted,

/s/ Shanshan Liang
Shanshan Liang, Esq.
Florida Bar No. 112991
sliang@customscourt.com
Liang + Mooney, PLLC
2104 Delta Way #1
Tallahassee, FL 32303
(850) 893-0670
*Counsel to Plaintiff*

## CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on August 11, 2023, copies of Plaintiff's Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, Suite 4.4-B
Washington, D.C. 20229

/s/ Shanshan Liang
Shanshan Liang
Liang + Mooney, PLLC